

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

September 22, 1961

Honorable Robert S. Calvert
Comptroller of Public Accounts
Capitol Station
Austin, Texas

Dear Mr. Calvert:

Opinion No. WW-1146

Re: Exemption from inheritance
taxes of certain devises
and bequests to charitable
institutions.

In connection with your request that this office furnish you with an opinion on the above captioned matter, you have supplied us with the following facts.

Morris Glozman died November 14, 1959. By the terms of paragraph 4 of his last will and testament, which has been duly admitted to probate, the decedent directed ". . . that my estate be divided equally among The B'NAI B'RITH OLD FOLKS' HOME at Memphis, Tennessee, THE SHRINE CRIPPLED CHILDREN'S HOSPITAL FUND OF Houston, Texas, and THE JEWISH CONSUMPTIVE HOME of Denver, Colorado."

Whether an exemption from inheritance taxes may be accorded these testamentary charitable gifts must be determined in view of the provisions of Article 14.06, Title 122A, Tax.-Gen., Ch. 14, V.A.T.S. The pertinent provisions of Article 14.06 are the following:

"If passing to or for the use of the United States, to or for the use of any other person or religious, educational or charitable organization or institution, or to any other person, corporation or association not included in any of the classes mentioned in the preceding portions of the original Act known as Chapter 29 of the General Laws of the Second Called Session of the 38th Legislature, the tax shall be:

". . . .

"Provided, however, that this Article shall not apply on property passing to or for the use of the United States, or to or for the use of any religious, educational or charitable organization, incorporated, unincorporated or in the form of a trust, when such bequest, devise or gift is to be used within this state. The exemption from tax under the preceding provisions of this Article shall, without limiting its application under

other appropriate circumstances, apply to all or so
much of any bequest, devise or gift to or for the use
of the United States, or a religious, educational or
charitable organization, which is, in writing and
prior to the payment of the tax, irrevocably committed
for use exclusively within the State of Texas or trans-
ferred to a religious, educational or charitable organi-
zation for use exclusively within this state.

"Provided, further, that if the property so passing
is to or for the use of a religious, educational, or charit-
able organization which conducts its operations on a
regional basis, one such region of which includes the State
of Texas, or any part thereof, then a bequest, devise or
gift to be used within such region shall be deemed to be
used within this state.

"For purposes of this paragraph, a religious, educa-
tional, or charitable organization shall include, but not
be limited to, a youth program of physical fitness, character
development, and citizenship training or like program."

We will first consider whether the devise and bequest to the Shrine
Crippled Children's Hospital Fund of Houston, Texas, is exempt from inheri-
tance taxes. You have furnished us with the inheritance tax return file in
connection with the estate of this decedent. This return reveals that the
correct name of the recipient of the bequest under consideration is The
Arabia Temple Crippled Children's Clinic. This Clinic is a Texas corpora-
tion chartered for the purposes of supporting "benevolent, charitable and
educational undertakings for crippled children not over the age of four-
teen (14) years, regardless of race, creed or color . . ." The office of
the corporation is maintained in Houston, Texas. On January 11, 1961, at
a meeting of the Board of Trustees of the corporation, a resolution was
adopted authorizing the officers of the corporation to execute and deliver
to the Honorable Robert S. Calvert, Comptroller of Public Accounts of the
State of Texas, on behalf and in the name of the corporation, an agreement
irrevocably committing all the property passing to the corporation under
the decedent's will for use for charitable purposes exclusively within this
State. A copy of this resolution together with a letter from the Clinic,
acting through the Chairman of the Board, was sent to Honorable Robert S.
Calvert. In the letter the Clinic irrevocably committed all the property
here involved for use for charitable purposes within this State.

We think that this devise and bequest is clearly exempt as one to a
"charitable organization and a 'gift . . . to be used within this State
. . .', and that the bequest and devise has been 'irrevocably committed
for use exclusively within the State of Texas. . .'". Since every con-
dition of the statute has been satisfied, we need not and do not pass upon

the question of whether a specific commitment was necessary, under the submitted facts, in connection with this particular devise and bequest.

We will now consider whether the devise and bequest to the Jewish Consumptive Home of Denver, Colorado, is exempt from inheritance taxes. The inheritance tax file reflects that the correct name of this bene- ficiary is The National Jewish Hospital at Denver. The Hospital is a non-profit Colorado corporation having as its corporate purpose the opera- tion of a hospital or hospitals. According to the by-laws of the corpora- tion, its specific purpose is to treat, without charge, and without dis- tinction of creed, persons suffering from tuberculosis or diseases of the chest and to conduct education and research in this field. They also pro- vide "The Services of this Hospital shall be free and non-sectarian", and "none may enter who can pay - none can pay who enter".

On December 28, 1960, the Board of Trustees of The National Jewish Hospital at Denver adopted a resolution which contains the following para- graphs:

"WHEREAS, the National Jewish Hospital at Denver is engaged solely and exclusively in charitable activities; and,

"WHEREAS, the National Jewish Hospital at Denver maintains a regular office within the State of Texas for the purpose of conducting and carrying on its charitable activities; and,

"WHEREAS, the National Jewish Hospital at Denver expends, annually, between $25,000.00 and $30,000.00 within the State of Texas, solely for charitable purposes;

"NOW, THEREFORE, IT IS HEREBY RESOLVED, that the National Jewish Hospital at Denver irrevocably commit all properties and assets, of whatsoever type or nature, passing to it under and by reason of the Last Will and Testament of Morris Glozman, deceased, for charitable purposes exclusively within the State of Texas and States contiguous to the State of Texas."

A copy of the resolution in its entirety has been forwarded to the Honorable Robert S. Calvert, together with a letter from The Honorable Phillip Houtz, Secretary of The National Jewish Hospital at Denver. In this letter, Mr. Houtz states on behalf of the Hospital that it irrevocably commits all the property received under the will, in question, for use for charitable purposes "exclusively within the State of Texas and States con- tiguous thereto."

We have not been informed of the exact nature of the charitable activi- ties carried on, and to be carried on, by use of the bequested funds, by the Hospital in this and contiguous States. For the purpose of this opinion,

we will assume that the charitable activities to be carried on in this State by the use of the funds are in connection with the actual operation of the Hospital for the use and benefit of Texas residents. However, in view of the fact that the funds in question were not irrevocably committed to exclusive use in Texas, but also to use in "States contiguous thereto", we are of the opinion that an exemption for this devise and bequest cannot be obtained, unless and until the funds are irrevocably committed to the exclusive use in Texas.

We do not believe that the mere act of irrevocably committing a bequest for charitable purposes to be used exclusively within the State of Texas and States contiguous to the State of Texas, would constitute the conducting of the Hospital's operations on a regional basis. The Hospital admits charity patients, without limitation as to residence. It is clear to us, that for a charitable organization to conduct its operations on a "regional basis", as that term is used in the statute, that the entire field of its operations would have to be divided into separate and distinct regions and be of a permanent nature, with each region being subject to local management and control, under proper directives from the officers or directors of the charitable organization.

If it could be said that irrevocably committing a bequest to be exclusively used in Texas and one or more States contiguous to Texas would constitute the hospital's operations to be on a regional basis, and if we are correct, and we believe we are, in stating that for a charitable organization to operate on a regional basis, that its entire field of operations would have to be divided into separate and distinct fields, the following anomaly could result. New Mexico, Oklahoma, Arkansas and Louisiana are the only states contiguous to Texas. We will assume that the Hospital is the recipient of thirteen additional charitable bequests. The directors of the hospital make a similar commitment as to each additional bequest, (1) One to be used exclusively in Texas and New Mexico, (2) one to be used exclusively in Texas and Oklahoma, (3) one to be used exclusively in Texas and Arkansas, (4) one to be used exclusively in Texas and Louisiana, (5) one to be used exclusively in Texas, New Mexico and Oklahoma, (6) one to be used exclusively in Texas, New Mexico and Arkansas, (7) one to be used exclusively in Texas, New Mexico and Louisiana, (8) one to be used exclusively in Texas, New Mexico, Oklahoma and Arkansas, (9) one to be used exclusively in Texas, New Mexico, Oklahoma and Louisiana, (10) one to be used exclusively in Texas, Oklahoma, and Arkansas, (11) one to be used exclusively in Texas, Oklahoma and Louisiana, (12) one to be used exclusively in Texas, Oklahoma, Arkansas and Louisiana, and (13) one to be used exclusively in Texas, Arkansas and Louisiana. This would result in the five states of Texas, New Mexico, Oklahoma, Arkansas and Louisiana being divided into fourteen separate regions with Texas being in all fourteen regions, and each of the other four states being in seven of the regions. This anomaly could be further multiplied indefinitely by irrevocably committing such funds to certain designated portions of Texas, as the statute provides, "one such region of which includes the State of Texas, or any part thereof. . ."

. We therefore hold that an exemption from the inheritance tax for the devise to The National Jewish Hospital at Denver cannot be obtained unless and until the funds in question are irrevocably committed to the exclusive use in Texas.

The third beneficiary of the testator's largess is the B'NAI B'RITH OLD FOLKS' HOME, at Memphis, Tennessee. The inheritance tax return reflects that the correct name of this institution is the B'NAI B'RITH HOME AND HOSPITAL FOR THE AGED, INC. The B'NAI B'RITH HOME AND HOSPITAL was incorporated under the laws of the State of Tennessee for the purpose of "' the support of any benevolent or charitable undertaking as a Lodge of Masons, Odd Fellows, hospitals for the sick, houses of refuge or correction, orphan asylums, and all other objects of like nature' and specifically for the ownership and operation of a home and hospital for the aged." The by-laws of the Home state that its purpose is to operate a home and hospital in Memphis, Tennessee, and to provide for the physical and spiritual needs of aged and infirm Jews who reside within the geographical limits of District Grand Lodge #7. The geographical limits of B'NAI B'RITH District Grand Lodge #7 embrace the following states: Alabama, Arkansas, Louisiana, Mississippi, Oklahoma, Texas and Tennessee. The Secretary of the Executive Committee of the Board of Directors of the corporation has furnished a certificate which contains the information that many Texas residents have resided in the Home and received hospital care during its existence. He states that at times there have been as many as 20 persons from Texas and that there are presently in residence at the Home and Hospital 12 Texans. He points out that residents of Texas are required to serve as members of the Board of Directors of the corporation.

Pursuant to a resolution adopted by the Executive Committee of the Board of Directors of the corporation on January 23, 1961, the B'NAI B'RITH HOME AND HOSPITAL has irrevocably committed all of the property passing to it, under the will in question, "for use for charitable purposes exclusively within the State of Texas, Arkansas, Tennessee and Louisiana. . ." A copy of this resolution has been transmitted by the President of the corporation to the Honorable Robert S. Calvert, Comptroller of Public Accounts for the State of Texas, together with a letter on behalf of the corporation stating that it is "a charitable organization which conducts its operation on a regional basis, which includes the State of Texas."

We do not believe that this devise qualifies for exemption under the provisions of Article 14.06. Under the submitted facts and, indeed by the express terms of the by-laws of the Home, its residents which are drawn from within the geographical limits of District Grand Lodge #7, which embrace seven, not five states. In view of this and our holding above as to The National Jewish Hospital at Denver, we are constrained to hold that an exemption under the provisions of Article 14.06 cannot be obtained unless and until the funds in question are irrevocably committed to the exclusive use in Texas.

## SUMMARY

The devise to The Arabia Temple Crippled Children's Clinic is exempt from inheritance taxes.

The devise to The National Jewish Hospital at Denver and the devise to the B'NAI B'Rith Old Folks Home, under the present state of facts, is not exempt from inheritance taxes.

Yours very truly,

WILL WILSON
Attorney General of Texas

By:  W. V. Geppert
Assistant Attorney General

WVG:me

APPROVED:

OPINION COMMITTEE
Morgan Nesbitt, Chairman

Linward Shivers
Riley Fletcher
Wm. R. Hemphill

REVIEWED FOR THE ATTORNEY GENERAL
BY:  Leonard Passmore